Would counsel proceed? Thank you, Your Honor. Timothy B. Miguel, on behalf of Plaintiff Appellee Alvaro Martinez. Obviously, Your Honor, I thought the best way to illustrate what occurred below is I wanted to provide you blow-ups of what's contained in the case. And I think that's the best way to illustrate what's contained in the case. I guess the critical question here is, do you have enough to get past summary or do you have enough to prove that the defendant you're suing made the machine that hurt the plaintiff? That's correct. I hope these will illustrate my point. And now show us where to look. What I marked up here was around excerpts 55 to 64, somewhere around there. If you look at document 37, page 42. 42. Okay. Got it. Page 50, I'm sorry, page 55. Got it. Father's exhibit has the 1 on it. That's the original brochure for Mr. Maskell who designed the product. Then if you go to exhibit 37, page 60, there are six photographs on that page. Yep. The referring to it, it says IMG 2787. That's the upper right photograph. Got it. That's the second blow-up. Now, how does that show that the defendant made the machine? That is the machine in which Mr. Martinez was injured. The court held that there were four things that was different from the actual model that was made by Mr. Maskell. One was that there was an air valve switch attached to the rear support arm. Mr. Maskell testified that every machine has an air valve switch attached to someone's machine so they can have maintenance on it. It doesn't matter where it's put. The second one was that there's no stainless steel post attached to the base. Well, it's true, the exhibit Mr. Martinez was hurt on does not have that, but I will point out to you Wait a minute. We're talking a little bit backwards. Your ability to rebut some potential inferences is one thing, but your ability to prove that the defendant made the machine is distinct from that. And I want to know what shows the defendant made the machine. What you're offering so far, as I understand it, is rebuttals to the arguments that they didn't because of this and that. These exhibits show that it's the same exact machine coupled with the testimony we presented and the evidence we presented at the hearing. There is no distinction between any of the machines because the third one here, which is contained in Document 37. I thought the evidence was that all of the Smurfett built machines have a snorkel label on them and this one doesn't. Well, this exhibit here right in front of you, Your Honor, which was marked as Exhibit 37 to the depositions, doesn't have a snorkel identification label on it, but it's a snorkel machine. How do I know? Because the way it was built. How could a jury infer that it's a snorkel machine? I don't get that. In the consumer vacuum sealing machines, I guess a lot of them use that when we, if you buy a big package of steaks at Sam's Warehouse and you freeze most of them, they all look basically alike because they all vacuum out the bag and they heat seal it. The function makes them all look alike. All 35 millimeter single lens reflex cameras look alike, but I want something that shows snorkel made it. These were designed specifically for sealing fruit concentrate bags. They were on a basic conveyor belt system and the standard purpose is only so it's above the conveyor, it's the belt itself, the gravity free roller. What I'm asking is, function would make the machines tend to look alike because they're designed to do the same thing, but I want to know what there is to show snorkel made it. What shows is the configuration of the machine, the way it does the job, the fact it has the design by Mr. Maskell. You're talking about similarity, you're not talking about any evidence that the machine was made by snorkel. Well, I believe that it shows they're exactly the same machines. But doesn't Mr. Maskell say that the machine you're talking about could be easily replicated by anyone? Yes, he goes on to say there's only one manufacturer that tried to do it and it's a completely different type of design. It has a head over it that has the probe in it instead of the way this one is done. There's no other machine to his knowledge, he testified, that makes the snorkel machine the same way as he made it. Because he made it for a specific purpose, it was just for the fruit concentrate business basically in California. And that's why they did them. And there's no other machine that looks exactly the same as the snorkel for this particular purpose. What the difference they claim was is that because it had a different pedestal and that there were supposed to be welding marks on it, that's what made it different. That was the only evidence that gave them a certain why it was not. Well, no, actually there were about four different things that they listed. One was the air valve switch. The override switch, which is obviously very important in this case, correct? Sure. And there's an override switch in the... And the beam construction was different? No, the construction's the same. As you can see, there's a specific comparison of the brochure. It's the same configuration. Obviously, there were some stuff that's not on there because they weren't in existence back in the 60s or 70s. But it's the same configuration, same exact machine. It also, the other was that there was a different vacuum pump installed. There is no vacuum pump installed on any of these machines because they use an air hose now. None of them have a, even the Snorka does not have a vacuum pump attached to it because they're all attached by air hoses. They don't use those at all. So that has a distinction without meaning because none of them have them, even the Snorka. All I'm saying is these two exhibits I'm showing you are Snorkas. The industry-approved machine looks exactly like it, functions the same way, same colors. It may have some different color type of blades or whatever on it. Not quite the same colors. But the blade would change because Mr. Maska said he wouldn't expect the parts to last more than five years in this particular industry. So what we've got is a half-century-old machine that does the same thing and looks sort of similar? Thirty-year-old machine that looks exactly, I say looks, they say substantially similar. I believe it looks exactly the same as you compare the photographs. I'm sorry. My presentation is I don't need expert opinion for it. You can look, the jury can look at the photographs and make the determination how it functions. The other point I would make. I'd like to see a label or papers, actually. I'm sorry? I would like to see a label or papers. I mean, the way I know a camera is a Nikon, even though it looks an awful lot like all the other SLRs that imitate a Nikon, is it says Nikon on it. I would like to have had documents for the machine, too, that we could look at how it's repaired. They don't exist. Mr. Maska said he had some as-built plans but doesn't know where they are. There's no manuals. There's nothing that came with the machine. All they have is one identification label, which is on this exhibit here, which says Snorka. And it says it's model number 49. All I can tell you, Your Honor, I believe over time you just lose that type of identification plate because of what occurs and how they're used in the packaging plans. And the final thing I would point out, Your Honor, is there's much more that is shown by Mr. Flynn in his declaration as to what he did than there is in Mr. Olson or Mr. Fisher, which is the basis for their summary judgment motion. They don't even say they saw the machine operated. They didn't see the machine operated by my client. Mr. Flynn saw all those, and that's what he said in his declaration. And I would submit that that should be sufficient to do that. I notice I'm running out of time. Unless you have any questions, I'll reserve my time. Roberts. I think I interrupted you. Could you go ahead? Thank you, counsel. If it may please the Court, Todd Baxter on behalf of Jefferson Smurfett Corporation. The granting of the motion for summary judgment should be effective. I can't hear you. I'm sorry, Your Honor. The granting of the motion for summary judgment should be affirmed. There is no evidence that presented that Smurfett Corporation or Container Corporation of America actually built the injury-causing machine. There are key differences that the Court looked at and all the evidence demonstrated, particularly the one Your Honor pointed to before, which is the fact that there was an override switch on the back of the injury-causing machine, and the evidence all establishes that Smurfett, the snorkel machines built by Smurfett never had anything like that. You had palm switches that you had to push in simultaneously. That's how you ran the machine. There was no way to override it. They did not build the machine. There are other differences. The stainless steel base, that is how the snorkel machine was built by Smurfett. There's a difference in the beam structure, the welds. It's a completely different machine. And all we've really demonstrated, or all plaintiffs really demonstrated, that the injury-causing machine was successfully designed and built by somebody other than Smurfett because people were copying these machines and there wasn't a label on it. The vacuum pumps were in different locations. That is the problem here is that Smurfett, they're trying to hold Smurfett responsible when they cannot demonstrate that Smurfett actually built this particular machine. The testimony even of Jim Flynn, if it doesn't run into problems with admissibility, which it should because of the lack of foundation for his comments, since if you look at paragraphs 13, 14, 15 of his original declaration and even look at his amended declaration, he doesn't specifically state, he says they're substantially similar. He doesn't say that Smurfett actually built it. Then he backs away from that in his supplemental declaration. Instead of saying substantially similar, he says it's more true than not true that this is a snorkel machine. Most likely, he thinks. Could you, I had trouble understanding the words and I had trouble understanding the pictures in the record because they're kind of small. Could you walk around and point to what you're talking about on the difference in the buttons and the difference in the steel? Maybe take the picture with you so it will be on the record. You're referring to Exhibit 34 now? Correct. I believe it's the snorkel machine. The palm buttons are here to actually run. So those are the palm buttons down there on the uprights? That you push in to operate it. It isn't designed with an override switch. The idea is both your hands are occupied so you can't stick them in the hot part? Hands in there. It's a safety feature. There's no override switch on the ones that were built by Smurfett. I can't tell you about the override switch because there isn't one on this. So it's more like a dead man bar on a lawnmower? Precisely. When you take your hands away, the only way you can operate it is to push it both simultaneously so your hands can't be there. When you take your hands away, it stops the machine. They don't have an override switch so you avoid this very scenario where somebody could actually turn it on while your hands are in there. The structure itself, although this is an older looking model. Which picture am I supposed to look at here for the buttons in the exhibit? This particular exhibit is plaintiff's exhibit 34, Your Honor. What I've got here, these things, IMG 2788 JPEG. I know there are small pictures that actually were presented to the court. These, I think, were. Which one should I be circling and drawing little arrows on my excerpts here? It looks to me like it's excerpt record 24. No. It is 24 on your excerpts. 29, 24. This is a large site. We'll say it's a large site. It's on page 25, 29. I've got all these tabs here and I'm all confused. And I'd really like to put a blue sticky and an arrow. I can't figure it out. Can you figure it out? Go ahead and keep arguing. Is this the injury producing machine? No. It is not. It's an example of one of your machines. Which I think highlights the problem here, Your Honor. A lot of people copied this. Other manufacturers copied this. Oh, now I get it. They purchased these different designs. And while they're talking about the originator, which probably was Smurfit, when you copy it, it's not going to be completely different. But you're going to have different key things like an override switch that isn't in a Smurfit design. You're not going to have the same professional welds, which is the difference that people were talking, the testimony in this case, the difference in the quality of the product, the beam structure that was used, the stainless steel base, the differences, which is kind of a, it gives you an indicator that it's a Snorka. On this dead man switch, on the Smurfit built machine, you have to have your palm on that red button and on the green button that are both on the bottom part. That's how I understand it. The only way to operate it is to push them in so your hands, it's a safety feature, so your hands aren't anywhere else. There is no override switch on a Smurfit machine. There isn't. There isn't any override switch. And this is one in image 2787. It doesn't have those buttons. It just has an override switch on the back. Are you talking about the injury costing machine? Yes. I don't know if they actually have it. I think it's that one on the left there. Yeah, this one. They had a different type of arrangement for, I mean, they had a button. They've got two yellow buttons there. They're different colored buttons. And even James Flynn, their expert, talked about the fact that there's a difference. Do you have to work them the same? Do you have to have a palm on each one to work the machine? I believe that's how this one works. It's understandable that if you're going to copy the design, probably that you would do that as well. But at the same time, this one has an anti-fuel type switch, which is what causes the accident. And the Smurfit one does not. Because he had a hand in the machine when they turned on that override switch. So you can't – the evidence – How could he get his hand in if he has to put his palm on both those buttons? Well, the difference is that with the Smurfit, if you put your palm in, that's the way the vestibule operates. If you take your hands off, you can't operate the button. Dead man switch, yeah. You can't operate the button. This one, as far as I recall, doesn't really operate the button. But what it has to do is somebody else flipped the override switch, or the person flipped the override switch, which caused the accident. He wasn't pushing these hands. Oh, you mean the override switch overrides the dead man switch? Correct. I get it. Yes. Yes, it's different. So that's like if you tie off your lawnmower dead man with a shoelace. Yes. If you want to override for, I guess, your lawnmower, you would try and do something like that. But most lawnmowers, if you had a Black & Decker lawnmower that had that type of a kill switch where you're pushing your lawnmower, and if you let go, it just automatically stops. Unless you find that a big nuisance and you override it by tying a shoelace around it. Right. And if another manufacturer comes along and likes the way Black & Decker did theirs and wants to design something somewhat similar, because that happens all the time. You're talking about cameras. They all sort of look alike. But that happens all the time, I think, in manufacturing. You come up with something else, but maybe you have that kill switch that you push. Okay. I think I get it now. Tell me if I'm right. I had thought of an override switch as a kill switch. No matter what's going on, you hit the big red button and the machine stops. But if I understand it right, it's the opposite. You hit the button and you don't need to work the dead man buttons anymore. Correct. That's what happened in this instance is it overrides the dead man switch. It overrides the dead man switch. So the override button is like the shoelace. Correct. Correct, Your Honor. And I think that's the key difference. I only have 23 seconds left. But that's the key difference, really, between the two machines. There are other differences as well. Just from looking at the machines, when the folks on behalf of Smurfett looked at them, they know how the machines are built. They're the ones who built them. And go ahead, Your Honor. What about the new evidence of Mr. I think it's Smitkamp? It's not really new evidence. If you're talking about Robert and William Smitkamp and the opportunity to take their depositions, a few days after the deposition cutoff, they had the opportunity. Oh, it was after the deposition cutoff and after the summary judgment decision. Correct. And the Court continued the summary judgment motion three times. I am sure that if you were to ask the Court, I need to take these two depositions, you probably would have gotten leave to do it. There's no reason to continue it three times when you're trying to come up with additional evidence. You can't wait on that right to find that evidence until after the whole case is over. It's not like you didn't know about it. Robert and William Smitkamp, their depositions were noticed, happened to be after the discovery cutoff. My experience in the Eastern District, you can go in and get an amended schedule without too much problem. So you continue the discovery. The Court even gave you three opportunities by continuing the motion for summary judgment. You didn't take the interesting part, Your Honor, is you didn't take the depositions of people who you may have asked the question, who did you buy this from? And do you guys have those records of who you bought it from? That didn't happen. And if you would have done that, maybe you would have found out it's XYZ Corporation and it wasn't Smurfett. Was there any proffer, though, in regard to the Smitkamp deposition of the new evidence motion that would indicate that anything would come of that as far as where these machines came from? There wasn't a presentation of, I expect to get this testimony. There wasn't an offer of proof as to what the new evidence would be. There was speculation that I may be able to find out who actually manufactured it or I may be able to find out that it was Smurfett. The problem with it is that this wasn't like it was new. These were the employers of the person who was injured. There's no reason you couldn't have taken their depositions at another time. It's not really newly discovered evidence in the context of what you would expect to have as newly discovered evidence. I'm well over my time, Your Honor. Unless the Court has additional questions. I take it your company has a patent on your machine? I don't recall that they actually patented it. It just strikes me as odd that you'd be this far in the litigation and still have a dispute over who made it when probably you could ascertain that from the patents. That evidence wasn't in the record as to the patent. Yes, I didn't see that. It wasn't in the record. Others copied what Smurfett did and what other machines did. In this case, all the indicia of what the injury-causing machine had compared to the ones that were built by Smurfett. There's a big difference between the machines. Besides just not having a label on them as well indicating that they were made by Smurfett. End of the question. Thank you, counsel. I have to correct a few inaccuracies, Your Honor. Every single one of the machines has an override switch. I would point to the citation of Mr. Maskell, which I cited to the court. It's contained on document 37, starting on page 12. It goes over to page 13, which is paragraph 9 of our response to the undisputed facts. And I just quote, safety valve switch, also referred to as an activator switch and or manual override switch, is placed upon all types of machines with this type of pneumatic air valve. It is an override valve that all machines of this type have. It does not make the machine a non-snorkel machine just because it was connected to the steel bar. Oh, I'm confused now. Where am I looking? Ellen's excerpts. 37. That would be volume 1 of the Ellen's excerpts? Document 37, page 38. I don't see 37. I see a tab for 34 and a tab for 38. I can't believe you don't have 37. I'll be happy to give you mine. No, I don't want yours. I want to mark it up and tab it. But it's in there. I know we made some extra copies recently to send out, but it should be there for you. Oh, maybe I was looking at the wrong one. Okay, I've got it. Document 37. Page 13. Pages 12 and 13. Okay, got it. So the first issue is that the actual override switch is you can't see it, but it's behind here and it does have a lock on it and you've got to put it. And that's the issue. It doesn't lock. When you say, when you're referring to the exhibits, would you mind setting it so that we have a reference? Document 37. Page 16. Quarterback number 2787. It's behind the portion of the frame. The box here is closed and has a lock on it. On exhibit 37. Page 64. Quarterback 3219. You can see a quarter out of that frame. There's a button, there's a green prompt button. It's a zigzag box. Your evidence, then, that Snorka says they never made a machine with a button that would override the dead man double palm switch. Your evidence is it looks like you're quoting from your statement of undisputed facts as somebody saying that manual overrides are placed on all machines with this type of pneumatic air valve. And that's quoting from the person who designed and manufactured the machine, Mr. Maskell, who we took in near Chicago. He's the one that built it for Container Corporation of America, now Jefferson Smurf Fit. He's also the one that said, you go above that same page, he said he knows of one other type of machine that has a similar function as a Snorka, but he says, but it operates in a different manner than a Snorka. Its frame is completely different and in no way does it look like a Snorka. Again, that's, again, the ---- Was he able to identify a Snorka machine that had an override switch? I don't have his deposition here. All I have in what you cited me to is your statement of undisputed facts with a quote from it. If we're going to make a decision on that, I want to look at the direct and cross in context. Sure. It's right behind that. You're on the same section. His deposition starts at page 21 of document 37. I've included his entire deposition, and I've cited to the pages that we've got in our deputed facts. The other issue that I think is incorrect, Your Honor, is that the other original designs, Mr. Maskell said there's only one or two, and I just want to point out for a moment, the one that has the Snorka name on it, it has a different type of vacuum probe against exhibit 37, 64, or 3219. You see it's round. If you look at the original design, which is exhibit 3755, it's a flat probe that goes in and takes it out of the air. Even though the machine has the Snorka name on it, it's different from the original model. The model might have a kernel that has a flat probe against exhibit 37, 64, or 2217. Do they all have foot pedals? I'm finding it. No, excuse me. Do they all have foot pedals? I didn't hear. Do they all have foot pedals? Yes. I'm sorry. I thought we showed that there was causation also, but they're similar machines. What does it matter that on page 109, he's asked if he recalls whether there was an override button installed when he was at CCA, and he says, I don't know. All I can tell you is what citation he gave me. He says that in every machine that has a pneumatic air valve like this, they were originally designed with pumps, and now they use air hoses on them. I don't know how that would change it. But I would submit to you that it is the same machine. I know that people talk about substantial similarity. I've tried to explain that also. But it's clearly more likely true than not true that that's the same machine that Mr. Maskell designed, and it's not a copycat. Because if you look at their own exhibit, this one looks like it's got bad weld marks all over it. The entry position one does not. I notice I'm out of time, so if you have any other questions, I guess I'm done. Thank you, counsel. Thank you. Martinez v. Wawona Frozen Foods is submitted, and we're adjourned until 9 a.m. tomorrow.
judges: Kleinfeld, Thomas, Burgess